UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI NICHOLS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EHEALTHINSURANCE SERVICES, INC.,<br><br>Defendant. | Case No. 23-cv-06720-EKL<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. Nos. 14, 15 |

In this putative class action, named plaintiff Thomas Matthews alleges that Defendant eHealthInsurance Services, Inc. ("eHealth") violated the Telephone Consumer Protection Act (the "TCPA") by placing unsolicited telemarketing calls to his phone number, which was registered with the National Do-Not-Call Registry. eHealth moves to dismiss the complaint and to strike class allegations. *See* Mot. to Dismiss, ECF No. 14; Mot. to Strike, ECF No. 15. The Court carefully reviewed the parties' briefs and heard argument on October 22, 2024. For the following reasons, the Court GRANTS in part the Motion to Dismiss and GRANTS in part the Motion to Strike.

**I.   BACKGROUND**

Plaintiff Thomas Matthews alleges that he owns a cell phone with a phone number ending in digits "8364."[1] Compl. ¶ 59. He is the sole user and/or subscriber of his cell phone. *Id.* ¶ 60. Matthews alleges that his cell phone number was added to the National Do-Not-Call Registry (the "NDNC Registry") on or about August 31, 2021. *Id.* ¶ 62. On June 10 and July 15, 2022, eHealth

---

[1] The facts are taken from the complaint and assumed to be true for purposes of these motions. Initially, the complaint was brought by Matthews and another plaintiff, Terri Nichols. On February 18, 2025, Nichols filed a notice of voluntary dismissal without prejudice. ECF No. 46. Accordingly, this Order refers only to Matthews.

allegedly placed several telemarketing calls to Matthews. *Id.* ¶¶ 63-68. Matthews claims that he did not consent to receive these calls, and that he did not have an established business relationship with eHealth. *Id.* ¶¶ 70-71.

Matthews seek to represent a nationwide class of persons "registered on the National Do Not Call Registry . . . to whom Defendant and/or a third party acting on Defendant's behalf, made two [or] more telephone solicitations . . . within any twelve-month period." Compl. ¶ 92. Matthews asserts two causes of action on his own behalf and on behalf of the proposed class. Count 1 alleges violations of the TCPA, 47 U.S.C. § 227, *et seq.*, and Count 2 alleges violations of the TCPA's implementing regulations, 47 C.F.R. § 64.1200(C), *et seq.*

## II.      MOTION TO DISMISS

### A.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**B.     Discussion**

**1.     Count 1**

Count 1 appears to assert that eHealth violated the TCPA by using an Automatic Telephone Dialing System ("ATDS") or prerecorded messages. *See* Compl. ¶¶ 22, 30, 127, 129, 130; *see also* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting the use of ATDS or prerecorded messages, except for emergency purposes or with the prior express consent of the called party). eHealth moves to dismiss this claim on the basis that Matthews fails to allege that he received calls from an ATDS or that he received prerecorded messages. Mot. to Dismiss at 9-13.

In his opposition brief, Matthews concedes that the complaint "does not allege that Defendant utilized an automatic telephone dialing system ('ATDS') or an artificial or prerecorded voice." Opp. at 3-4, ECF No. 29. Matthews clarifies that the complaint "inadvertently" included references to ATDS, *id.* at 3, and that his claim is "based on Defendant's violations of the TCPA by contacting [Matthew's] telephone number registered with the [NDNC Registry]." *Id.* at 4.

At the motion hearing, Plaintiff's counsel agreed that Count 1 may be dismissed because Count 2 separately alleges a violation of the TCPA's NDNC Registry provision – the only claim that Matthews intends to pursue. Accordingly, the Court GRANTS the Motion to Dismiss Count 1 without leave to amend because Matthews does not allege any facts that could state a claim under this theory of liability, and the claim was asserted in error. *Lopez*, 203 F.3d at 1127; *see also Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) (striking immaterial allegations that were erroneously included in complaint).

**2.     Count 2**

Count 2 alleges a violation of the TCPA's implementing regulations, which prohibit telephone solicitations to telephone numbers that are listed in the NDNC Registry. The only disputed issue is whether Matthews must allege that he *personally* registered his phone number in the NDNC Registry to state a claim. *See* Mot. to Dismiss at 14-15. The Court holds that Matthews need not allege that he personally registered his number in the NDNC Registry. Rather, it is sufficient that Matthews alleges that his phone number "was added" to the NDNC Registry. Compl. ¶ 62. The plain language and statutory scheme of the TCPA and its implementing

3

regulations support this conclusion.

First, the plain language of the TCPA indicates that Congress sought to prohibit all unsolicited telemarketing calls to phone numbers in the NDNC Registry, without limitation as to who had registered the phone numbers. The TCPA instructed the Federal Communications Commission ("FCC") to initiate a rulemaking proceeding to implement the TCPA's protections. 47 U.S.C. § 227(c)(1). The statute provided that the FCC "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." *Id*. § 227(c)(3). The TCPA mandated that the implementing regulations "prohibit any person from making or transmitting a telephone solicitation *to the telephone number* of any subscriber included in the database." *Id.* § 227(c)(3)(F) (emphasis added). Through this language, it appears that Congress intended to prohibit calls *to phone numbers* in the NDNC Registry. This prohibition does not turn on whether the person who receives the call personally listed the phone number in the NDNC Registry. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 n.8 (9th Cir. 2023) ("The Do-Not-Call Registry lists numbers, not names."). This reading also comports with the TCPA's capacious private right of action. *Id.* § 227(c)(5) (providing a cause of action to any "person who has received" unsolicited calls); *Hall*, 72 F.4th at 989 (observing that the TCPA "provides a private right of action to redress unsolicited calls to [registered] numbers"). Congress did not limit the right of action to subscribers who personally added their phone numbers to the NDNC Registry.

Second, the TCPA's implementing regulations also indicate that a plaintiff need not allege that he personally registered his phone number in the NDNC Registry. The regulations provide for ongoing protection for the registered phone number unless it is removed by the consumer or by the database administrator. 47 C.F.R. § 64.1200(c)(2) (providing that, once a phone number is added to the NDNC Registry, the registration "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator"). Thus, the TCPA's protections attach to registered telephone numbers, regardless of whether the phone number is still used by the person who originally listed it in the NDNC Registry.

4

In addition, requiring a plaintiff to affirmatively allege (or prove) that he personally listed his phone number in the NDNC Registry would run contrary to the liability scheme of the TCPA's implementing regulations. The implementing regulations create a framework through which consumers benefit from the TCPA's protections as long as a phone number is registered in the NDNC Registry, unless the *telemarketer* proves that a specified safe harbor applies. *See id.* § 64.1200(c)(2)(i)-(iii) (placing the burden of proof on the telemarketer to "demonstrate" it has protocols to prevent calls made in error, or that the telemarketer "has obtained" consent). Notably, there is no safe harbor that precludes liability for calls made to persons who did not personally list their phone numbers in the NDNC Registry. eHealth's proposed construction would effectively read in an additional safe harbor that is not provided by the implementing regulations.

Based on the foregoing reasons, the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue – with one exception – has reached the same conclusion. *See, e.g.*, *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 WL 7391299, at *14 (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728-PHX-SMB, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024). The exceptional case is *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 WL 2713278, at *2-3 (N.D. Iowa June 9, 2022) (dismissing claim because plaintiff did not allege that she personally registered her phone number in the NDNC Registry). In *Rombough*, the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered* his or her telephone number on the" NDNC Registry." 47 C.F.R. § 64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

5

1   After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*. The Court finds that it is more consistent with the remedial purpose of the TCPA not to construe an additional pleading requirement absent a clear basis in the TCPA or its implementing regulations. "Because the TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017). Accordingly, eHealth's Motion to Dismiss Count 2 is DENIED.

## III. MOTION TO STRIKE CLASS ALLEGATIONS

### A. Legal Standard

Under Rule 12(f), a party may move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to avoid wasteful litigation of "spurious issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Therefore, a "motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024).

A decision to grant a motion to strike class allegations at the pleading stage is the "functional equivalent of denying a motion to certify a case as a class action" before discovery commences. *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (per curiam) (quoting *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002)). The Ninth Circuit has recognized that "often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Thus, in general, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable." *Id.* (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)). But when the problem with the class allegations is "facially evident, it makes sense to address the issue early on." *Baton*, 740 F. Supp. 3d at 883.

**B.     Discussion**

Matthews seeks to represent the following class:

> All persons within the United States, registered on the National Do Not Call Registry for at least 31 days, to whom Defendant and/or a third party acting on Defendant's behalf, made two [or] more *telephone solicitations* that promoted Defendant's products or services, to a cellular telephone number within any twelve-month period, within the four (4) years prior to the filing of the Complaint.

Compl. ¶ 92 (emphasis added). eHealth moves to strike the class allegations based on three purported deficiencies of this class definition. eHealth argues that the class definition is: (1) an improper "fail-safe" class; (2) overbroad because it includes members who do not have valid claims; and (3) indeterminate because it includes members who received calls from unspecified third parties acting on eHealth's behalf. The Court addresses these arguments in turn, finding only the first persuasive at this stage of the litigation.

First, eHealth argues that Matthews has defined an improper "fail-safe" class. *See* Mot. to Strike at 19-22. A proper class is defined by objective criteria. For example, in a false advertising case, the class might be defined as all persons who purchased a certain product during a certain time period. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123-24 (9th Cir. 2017). By contrast, a fail-safe class "is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). To continue with the false advertising example, a fail-safe class would be all persons who bought a product that the defendant "falsely advertised." *See Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008). This example illustrates a fundamental problem with a fail-safe class: To determine class membership, "it would be necessary for the court to reach a legal determination that [the defendant] had falsely advertised." *Id.* This approach is unmanageable and improper because courts may not "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Kamar*, 375 F. App'x at 736.

Here, eHealth is correct that the class definition is fail-safe because membership "turns on whether a consumer received a telephone solicitation from eHealth." Mot. to Strike at 20. A

1    "telephone solicitation" is not just a telephone call.  Rather, the TCPA's implementing regulations

2    define "telephone solicitation" to exclude calls made with consent or where there is an established

3    business relationship between the caller and the called party.  *See* 47 C.F.R. § 64.1200(f)(15).

4    Therefore, the Court cannot determine who is a member of the class without evaluating the merits

5    of each potential class member's claim, including evidence regarding consent and whether there

6    was an established business relationship with eHealth.  *Pepka v. Kohl's Dep't Stores*, No. 16-cv-

7    4293-MWF (FFMx), 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016).

8        Because this is a fail-safe class and defective as a matter of law, it is appropriate to strike it

9    at the pleading stage.  *See Olean Wholesale Grocery Coop., v. Bumble Bee Foods LLC*, 31 F.4th

10   651, 669 n.14 (9th Cir. 2022) (noting that a fail-safe class is impermissible).  Indeed, courts

11   frequently strike similar class definitions in TCPA cases where the class is defined to exclude calls

12   that were made with consent.  *See, e.g.*, *Salaiz v. eHealthInsurance Servs., Inc.*, No. 22-CV-

13   04835-BLF, 2023 WL 2622138, at *2, *5 (N.D. Cal. Mar. 22, 2023); *Dixon v. Montreal Fin.*

14   *Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 3456680, at *4 (N.D. Cal. June 24, 2016); *Winters*

15   *v. Loan Depot LLC*, No. CV-20-01290-PHX-SPL, 2022 WL 22865378, at *7 (D. Ariz. Mar. 17,

16   2022).

17       However, a class "may be redefined" to resolve the fail-safe issue.  *Olney v. Job.com, Inc.*,

18   No. 12-cv-01724-LJO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013).  Here, the issue can

19   be resolved by replacing the phrase "telephone solicitations" with "telephone calls."  Redefining

20   the class in this manner is appropriate because whether a person received a "telephone call" is an

21   objective criterion that does not require the Court to make an upfront determination regarding

22   consent.  *See Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8

23   (N.D. Cal. June 15, 2015) (declining to strike class definitions that "d[id] not weed out all

24   members who will not succeed on the merits by asking the court to make findings on legal issues,

25   such as prior consent, in determining class membership"); *see also Olney*, 2013 WL 5476813, at

26   *11 (declining to strike revised class definition of all persons "who received any telephone calls"

27   that did not exclude calls made with consent).  Accordingly, the Court GRANTS eHealth's

28   Motion to Strike the class definition with leave to amend consistent with the discussion above.

1   The Court now turns to eHealth's second argument, that the class is overbroad because it
2   includes members who lack valid TCPA claims. eHealth argues that the class necessarily includes
3   members who consented to be called, and those class members do not have valid claims.[2] This
4   argument is raised prematurely because eHealth has not submitted any evidence that any class
5   member consented to be called or had an established business relationship with eHealth. *See*
6   *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (individualized
7   issues of consent did not preclude provisional class certification in a TCPA case because
8   defendant failed to "show a single instance where express consent was given before the call was
9   placed"). At this early stage, the Court has no basis to conclude that "a great number" of class
10  members "could not have been harmed" by eHealth's allegedly unlawful conduct. *Olean*, 31 F.4th
11  at 669 n.14. The Court will not strike class allegations based on the speculative possibility that an
12  unspecified number of class members might have consented to receive calls. Discovery is needed
13  to evaluate eHealth's arguments about the overbreadth of the class. *See Vinole*, 571 F.3d at 942.

14  The cases eHealth relies upon are inapposite. For example, *Jamison v. First Credit
15  Services, Inc.*, held that a class definition was overbroad at the class certification stage based on
16  evidence "that a large percentage of the potential class did consent to receiving calls." No. 12 C
17  4415, 2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013). Here, the case is at the pleading stage,
18  and eHealth has not produced any evidence that Matthews or the putative class members
19  consented to receiving calls. Another case cited by eHealth, *Buonomo v. Optimum Outcomes,
20  Inc.*, confirms that eHealth's motion is premature. 301 F.R.D. 292 (N.D. Ill. 2014). In that case,
21  the defendant moved to strike class allegations, arguing that individualized issues of consent
22  would predominate over common issues. *Id*. at 298-99. The court rejected this argument as
23  premature because the defendant failed to present "any specific evidence" that consent would
24  require individualized proof. *Id.* at 298-99. The court held that the plaintiff "must have the

---

[2] There is an inherent tension between this argument and eHealth's first argument that the class definition is improper because it *excludes* calls made with consent. eHealth "cannot have it both ways. If it is per se impermissible to define the class in such a way that it only includes persons [who] . . . did not consent, it cannot be per se impermissible to re-define that class to include some individuals who consented to be called. To so hold would absolutely preclude class actions in TCPA cases, an outcome that finds no support in the law." *Olney*, 2013 WL 5476813, at *11.

United States District Court
Northern District of California

opportunity to conduct discovery" regarding whether the proposed class's claims were "susceptible to generalized proof." *Id.* at 299. The same principle holds true here.[3]

Finally, eHealth argues that the class is indefinite because it includes persons who received calls from "a third party acting on Defendant's behalf." Mot. to Strike at 17-18. The Court declines to strike or narrow the class definition on this basis because eHealth may be liable under the TCPA for telephone solicitations "where an agency relationship, as defined by federal common law, is established between [eHealth] and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016). The identity of relevant third parties can be clarified in discovery – for example, through an interrogatory requesting the identity of third parties, if any, that eHealth engaged to call consumers on its behalf to market its products or services. Courts have declined to strike similar class definitions. *See, e.g.*, *Olney*, 2013 WL 5476813, at *11 (declining to strike class definition that included persons who received telephone calls "from Defendant or its agent(s) and/or employee(s)") (cleaned up).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss Count 1 without leave to amend and DENIES the Motion to Dismiss Count 2. The Court GRANTS the Motion to Strike the fail-safe class definition with leave to amend, consistent with the instructions in this Order. The Court DENIES the Motion to Strike in all other respects. Matthews shall file an amended complaint within fourteen days of this Order. The amended complaint shall omit allegations regarding former named plaintiff Nichols in light of her notice of voluntary dismissal.

**IT IS SO ORDERED.**

Dated: March 3, 2025

Eumi K. Lee
United States District Judge

---

[3] eHealth argues that the class is overbroad because it includes persons who did not personally place their phone numbers on the NDNC Registry. This is not a requirement for a TCPA claim, *see supra* Section II.B.2, thus the Court declines to strike the class definition on this basis.

10